UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAYTON TOWERS CORPORATION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Dayton Towers Corporation ("Dayton"), by its attorneys Dickstein Shapiro LLP, as and for its complaint against defendant, Fidelity National Property and Casualty Insurance Company ("Fidelity"), alleges as follows:

**INTRODUCTION**

1.  Dayton owns seven high-rise residential buildings on Shore Front Parkway in a portion of Queens County known as The Rockaways (collectively, "Dayton Buildings"). Dayton is home to approximately 1,752 families. Each of the Dayton Buildings sustained significant damage caused by the weather event culminating on and around October 29, 2012, referred to as "Superstorm Sandy."

2.  Prior to October 29, 2012, Dayton purchased a separate flood insurance policy for each of the Dayton Buildings through the National Flood Insurance Program ("NFIP") from Fidelity, by way of Dayton's two insurance brokers, M.R. Cooper, Ltd. ("M.R. Cooper") and FS Insurance Brokers of New York, LLC ("FS Insurance"). In exchange for the premiums that Dayton paid, these policies provide Dayton limits of liability ranging from $2,519,000 to $2,765,700 per building, totaling $18,519,500 in the aggregate for the Dayton Buildings.

3.	Although Dayton timely submitted its claim to Fidelity following Superstorm Sandy, Fidelity took no action until March 2013.  On March 20, 2013, Fidelity purportedly cancelled the policies that Dayton purchased prior to Superstorm Sandy and purportedly issued different policies to Dayton to replace the unilaterally cancelled policies.  Each purported replacement policy provided Dayton with only $250,000 of limits per building and $1,750,000 in total aggregate limits for the Dayton Buildings.  On May 10, 2013, Fidelity tendered $1,750,000, which it described as "building payments equaling the policy limit of $250,000 for each of the Dayton Towers buildings[.]"  Fidelity also attempted to return what it described as the "overpayment of premium" for each of the original seven policies that it issued to Dayton to provide coverage for the Dayton Buildings.  Fidelity denies that it owes Dayton any further duties or obligations.

## THE PARTIES

4.	At all relevant times herein, Dayton was and is a Cooperative Housing Corporation organized and existing under the Private Housing Finance Law.

5.	Upon information and belief, at all relevant times herein, Fidelity was, and still is, authorized and licensed by the New York State Department of Financial Services to conduct the business of insurance in the State of New York, with its principal place of business located in St. Petersburg, Florida.

6.	Upon information and belief, at all relevant times herein, Fidelity was, and still is, authorized to participate in the NFIP pursuant to Title 42, Chapter 50 of the United States Code.

## JURISDICTION AND VENUE

7.	This Court has jurisdiction over the action pursuant to 42 U.S.C. § 4053 which confers original jurisdiction on United States District Courts in suits challenging the

disallowance or partial disallowance of any claim under a policy of flood insurance, without regard to the amount in controversy.

8. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of the property that is the subject of the action is situated in this district.

## BACKGROUND

*The Insured and the Underlying Loss*

9. At all relevant times herein, Dayton is and was the owner of the Dayton Buildings identified as follows:

   A. 7400 Shore Front Parkway, Rockaway Beach, New York ("7400")

   B. 7600 Shore Front Parkway, Rockaway Beach, New York ("7600")

   C. 7800 Shore Front Parkway, Rockaway Beach, New York ("7800")

   D. 8000 Shore Front Parkway, Rockaway Beach, New York ("8000")

   E. 102-00 Shore Front Parkway, Rockaway Beach, New York ("102-00")

   F. 103-00 Shore Front Parkway, Rockaway Beach, New York ("103-00")

   G. 105-00 Shore Front Parkway, Rockaway Beach, New York ("105-00")

10. At all relevant times herein, Dayton and the Dayton Buildings have operated and existed as a Cooperative Housing Corporation.

11. Each of the Dayton Buildings sustained significant property damage arising out of the weather event referred to as "Superstorm Sandy."

12. On and after October 29, 2012, as a result of Superstorm Sandy, the Dayton Buildings collectively suffered more than $12 million in property damage.

*The Insurance Policies*

13. Prior to October 29, 2012, Fidelity sold Dayton a separate Standard Flood Insurance Policy for each of the seven Dayton Buildings through the NFIP (collectively, the "Original Policies").

14. In exchange for $3,968 in premiums, which Dayton duly paid, Fidelity issued a policy for 7400, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012110 and provides a $2,765,700 limit of liability. M.R. Cooper brokered this policy.

15. In exchange for $3,968 in premiums, which Dayton duly paid, Fidelity issued a policy for 7600, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012112 and provides a $2,765,700 limit of liability. FS Insurance brokered this policy.

16. In exchange for $3,845 in premiums, which Dayton duly paid, Fidelity issued a policy for 7800, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012115 and provides a $2,519,000 limit of liability. FS Insurance brokered this policy.

17. In exchange for $3,968 in premiums, which Dayton duly paid, Fidelity issued a policy for 8000, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012113 and provides a $2,765,700 limit of liability. FS Insurance brokered this policy.

18. In exchange for $8,563 in premiums, which Dayton duly paid, Fidelity issued a policy for 102-00, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012116 and provides a $2,592,200 limit of liability. FS Insurance brokered this policy.

DOCSNY-550284

19. In exchange for $8,563 in premiums, which Dayton duly paid, Fidelity issued a policy for 103-00, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012117 and provides a $2,592,200 limit of liability. FS Insurance brokered this policy.

20. In exchange for $4,065 in premiums, which Dayton duly paid, Fidelity issued a policy for 105-00, effective from June 23, 2012 through June 23, 2013. The policy is identified by policy number 31 2510012119 and provides a $2,519,000 limit of liability. FS Insurance brokered this policy.

21. The Flood Declarations Page for each of the Original Policies is annexed hereto as Exhibit A.

*Fidelity's Denial of the Claim*

22. Dayton promptly notified Fidelity of the extensive damage sustained as a result of Superstorm Sandy.

23. On or about March 20, 2013, Dayton received what Fidelity described as a "Cancellation Notice" for each of the Original Policies.

24. According to the "Cancellation Notices," Fidelity retroactively cancelled each Original Policy as of June 23, 2012.

25. Also on March 20, 2013, Fidelity claimed to simultaneously issue a new policy for each of the Dayton Buildings (collectively, "Reissued Policies"). The Flood Declarations Page for each of the Reissued Policies is annexed hereto as Exhibit B.

26. Each of the Reissued Policies was identified by a new policy number, and each purportedly provided only a $250,000 limit of liability.

27. The National Flood Insurance Manual ("Manual") sets forth the grounds on which an insurer may cancel or nullify NFIP policies in a section aptly named the "Valid Reason Codes for Cancellation/Nullification of NFIP Policies."

28. The Manual provides as follows:

> Flood insurance coverage may be terminated by either cancelling or nullifying the policy, only in accordance with a valid reason for the transaction, as described in Paragraphs 1.B.1-24.

29. "22 – CANCEL/REWRITE" ("Code 22") of the Manual states as follows, in pertinent part:

> **22. Cancel/Rewrite Due to Misrating (TRPP reason 22)**
>
> This reason is used when ineligible PRPs [Preferred Risk Policies] or MPPP [Mortgage Portfolio Protection Program] policies are canceled and rewritten within the same company and when changes are made due to system constraints. This reason should also be used to cancel a standard-rated policy that is eligible for a PRP due to misrating . . . In order to process a cancel/rewrite due to misrating, the policy to be cancelled must have no paid or pending claim during the policy years(s) to be cancelled.

30. Fidelity cited "22 – CANCEL/REWRITE" as its only ground on which it cancelled the Original Policies and issued the Reissued Policies.

31. Dayton's Superstorm Sandy claim was a "pending claim" prior to March 20, 2013.

32. Fidelity made no payment to Dayton on its Superstorm Sandy claim prior to March 20, 2013.

33. Code 22 explicitly prohibited Fidelity from cancelling the Original Policies after Dayton's Superstorm Sandy claim was submitted and was pending.

34. Code 22 explicitly prohibited Fidelity from issuing the Reissued Policies after Dayton's Superstorm Sandy claim under the Original Policies was submitted and was pending.

6

35. By its plain terms, Code 22 only applies to Preferred Risk Policies or a Mortgage Portfolio Protection Program.

36. The Original Policies are neither Preferred Risk Policies nor part of a Mortgage Portfolio Protection Program.

37. The Reissued Policies are neither Preferred Risk Policies nor part of a Mortgage Portfolio Protection Program.

38. Code 22 is not a "valid reason" (as that phrase is used in the Manual) for cancelling the Original Policies.

39. Code 22 is not a "valid reason" (as that phrase is used in the Manual) for issuing the Reissued Policies.

40. There is no "valid reason" (as that phrase is used in the Manual) for cancelling the Original Policies.

41. There is no "valid reason" (as that phrase is used in the Manual) for issuing the Reissued Policies.

42. On June 18, 2013, Fidelity admitted that Code 22 was not a "valid reason" (as that phrase is used in the Manual) for cancelling the Original Policies and issuing the Reissued Policies.

43. On June 18, 2013, Fidelity stated that "there is not a reason code to fit every situation" but that "Reason Code 22 best fits [Dayton's] situation."

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST FIDELITY**
**(Breach of Contract; Specific Performance)**

44. Dayton repeats and incorporates by reference the allegations in Paragraphs 1 through 44.

DOCSNY-550284

45.     Prior to October 29, 2012, Dayton paid Fidelity in full the premiums owed for the Original Policies.

46.     On or about and following October 29, 2012, Dayton suffered property losses within the coverage of the Original Policies.

47.     The Original Policies are valid and enforceable contracts providing insurance coverage for the loss Dayton suffered in connection with the Dayton Buildings.

48.     Dayton provided Fidelity with timely notice of Dayton's Superstorm Sandy loss.

49.     Dayton substantially performed all material obligations on its part to be performed under the Original Policies.

50.     Dayton's Superstorm Sandy claim triggered Fidelity's Original Policies' indemnification obligation.

51.     Notwithstanding Dayton's express request for coverage under the Original Policies, Fidelity tendered only a partial payment to Dayton.

52.     The partial payment to Dayton represents the Reissued Policies' limits of liability.

53.     Fidelity's cancelation of the Original Policies constitutes a breach of the Original Policies.

54.     Fidelity's issuing of the Reissued Policies constitutes a breach of the Original Policies.

55.     Fidelity's failing and refusing to make full payment due under the Original Policies constitutes a breach of the Original Policies.

56.     As a direct and proximate result of Fidelity breaching the Original Policies, Dayton suffered damages equal to the sums it would be entitled to recover as benefits under the Original Policies.

57. For breach of the Original Policies, Dayton prays entry of judgment awarding specific performance and the payment of damages in an amount equal to the amount owed under the Original Policies, in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST FIDELITY
**(Declaration of Coverage)**

58. Dayton repeats and incorporates by reference the allegations in Paragraphs 1 through 58.

59. Dayton seeks a judicial determination of Dayton and Fidelity's rights and duties with respect to an actual controversy arising out of the Original Policies.

60. On or about and following October 29, 2012, Dayton suffered property losses within the Original Policies' coverage.

61. Dayton provided Fidelity timely notice of Dayton's Superstorm Sandy claim under the Original Policies.

62. Dayton substantially performed all material obligations on its part under the Original Policies.

63. Fidelity is obligated to pay in full, subject to the terms of the Original Policies, Dayton's property losses.

64. Fidelity refused to accept its legal obligation to pay Dayton's property loss claim under the Original Policies.

65. An actual controversy of a justiciable nature presently exists between Dayton and Fidelity concerning the parties' rights and obligations with respect to Fidelity's obligations to pay Dayton's property losses under the Original Policies.

66. This Court issuing declaratory relief will terminate some or all of the existing controversy among the parties.

DOCSNY-550284

## DEMAND FOR JURY TRIAL

67. Dayton hereby demands a trial by jury on all issues.

WHEREFORE, Dayton requests that this Court:

A. On the First Cause of Action, award Dayton damages, including interest and costs of suit, in an amount to be determined at trial;

B. On the Second Cause of Action, issue a declaration in accord with Dayton's contentions stated above and declaring Dayton's rights and Fidelity's duties, including Fidelity's duty to pay for all losses covered under the Original Policies;

C. Award Dayton the costs, disbursements and attorneys' fees incurred; and

D. Award such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 21, 2013

**DICKSTEIN SHAPIRO LLP**

By:   s/Jeffrey L. Schulman
      Jeffrey L. Schulman (JS-5739)
1633 Broadway
New York, New York 10019
Tel.: (212) 277-6500
Fax: (212) 277-6501

*Attorneys for Plaintiff*
*Dayton Towers Corporation*